Supply Systems v. Department of Defense 06-1094, Mr. Shirley. Your Honor, my name is J. Douglas Shirling. I'm representing the appellant in this case, which is Defense Supply Systems, Inc. And this appeal has been brought primarily based upon the Armed Services Board of Contracting appeals failing to take into consideration a substantial portion of evidence in the record, failing to apply the law, even the law it indicated in its own decision, and then its inconsistency in failing to apply its own findings of fact to its decision. Now, prior to addressing, and my primary reason for being here at oral argument is to reply to the government's brief. But prior to that, I'd like to note for the record a couple of objections. I did note that two of the attorneys indicated on the government's brief had not filed entries of appearance. Second of all, maybe more troubling to me was the final document included with the government's exhibits in the joint exhibit appears to be a draft, unsigned copy of the ASPCA's decision. And I simply register that as that was very puzzling to me as to how you could obtain an unsigned draft of that decision. Mr. Sherwood, isn't this case simply about whether Modification 3 incorporated something that was already in the opinion, already in the contract, or whether it imposed a new obligation? Yes, it is. It's not the case? No. The case is relatively simple, despite the fact I do believe the government has tried to confuse the issues in its brief. The case involves Modification 3, whether or not it was a change or not a change. The government, up until this brief, had indicated it was not a change. It looked like a change. It was not a change. In this brief, the government for the first time indicated on page 18 that it, in fact, is a change. The contractor's position has been since it was issued, it was a change. Well, Mr. Sherling, I find this case puzzling. I do, too, Your Honor. Very good. Let me tell you why I find it puzzling. I find it puzzling because I don't understand why you're here. Okay. What puzzles me is the government wrote Mod 3, probably one of the sloppiest mods I've seen, and I've seen a lot of them in these cases. But within a few days afterwards, the government contacted your client and said, you know, all we want is please send us one of the dollies to test. We don't want you to give us a first example, whatever they call it, first example, whatever it is. We don't want you to start over. We don't want you to make new dollies. You've already made all the dollies. We're prepared to pay you for the fact that I think they already had paid, hadn't they, or they were prepared to pay? They've never quarreled about paying, right? I mean, your client got paid for the dolly. No, got paid for the dollies it ultimately delivered, yes. Yes, it ultimately delivered them. The contract was performed. The government paid. Yes. I would have thought you all would be home drinking champagne and having a good time. And here you are up here at the Court of Appeals. I don't even want to think about what the lawyer's fees in all of this turned out to be. And you're arguing over who's going to pay for having shipped one dolly from there to here. This is a very puzzling case to me. We usually get cases that involve real money. Now, I understand that $2,000 may be important to some people. And I think it is certainly important to me. But I don't know why you're in the Court of Appeals over $2,000 of shipping money. Can you help me with this? Well, I can. First of all, if you were to look at Mod 3, and in fact the government… I don't want to look at Mod 3. I know Mod 3. It was written by somebody who was asleep at the time. I don't want to suggest they were on something because I have no evidence of that. But they were clearly asleep. And they clarified it as quickly as human nature allows for. And it got straightened out in four days, according to the record. Well, the contracting officer never responded to Modification 3 until Modification 4, which is issued three weeks later. Yeah, but the phone call was four days later and said, oops! Not from the contracting officer. It was from the government. Why did you want the president? Under contract law, the contracting officer has the ability to change a contract. Modification 3 is issued. It changed the contract. The contractor has no… He simply can't say, oh, I got a call from the government and I don't have to comply with the contract that's changed. I can simply do what I now think they want, despite the fact I've had verbal communication with regard to that issue. Does it make sense to interpret that modification as inappropriately drafted as it might be? Does it make sense to interpret that as requiring a whole new supply of 34 more dollies and another test unit, et cetera, et cetera, et cetera? To me, that doesn't make any sense at all. I agree it does not make sense. And then, of course, then you have a phone call a few days later, as Judge Plager pointed out, that explains, you know, listen, this is what this is all about. We don't want you to start all over again. We just want to get some testing on you, which to me made perfect sense given the fact that there was some question raised about the source of supply of some components and their performance and all of that. No, and I completely understand. I think this is a crazy case myself. But what does a contractor- Especially when you're taking- Well, except that was a concession. Sure. Especially when you're taking action against your best and biggest customer. Well, the contractor actually offered to provide a unit back in December of 2002, although the response from the contracting officer at that point is that's fine as long as you meet all of these conditions. But what do you expect a contractor to do when the contract is modified to say you are now required to provide a first article test? I would think the contractor at that point would scratch its respective heads. I assume it had at least two. And would call up and say, help me, I don't understand what's going on here. Or would go home and take a vacation for a few days, come back to work, and discover a phone call from the government saying, whoops, let me tell you what we really meant. Wouldn't you think that's what a contractor would do? I can't understand what the contractor was doing. Help us. This modification didn't come out of nowhere. There had been all kinds of discussions as to what the government required. The contracting officer, on the day she issued this modification, instructed the administrative contracting officer in Colorado, telling her that this contractor will proceed as I direct him if and when he receives the modification. He receives the modification. He said, I can't do a first article. They come out and say, we're incorporating, again, the first article requirement in this contract. Contractor has no obligation to say, gosh, I'm not going to follow the direction, or what do you really mean? It's clear what is meant here. Mr. Shuren, you said there was a lot of discussion and correspondence leading up to this mod 3. Yes. Did any of those discussions suggest in any way that the government was leaning towards repeating the entire contract, issuing some sort of a modification that would obligate your client to provide a complete new set of these, Donnelly? No. There were discussions with regard to first article. And probably some discussions regarding quality issues and source of supply of components and testing and all of that? No. The contractor simply indicated it's too late to invoke a first article test. And that's why it became confusing when they received a modification that simply incorporated the first article test. It certainly was confusing. It was very confusing. But it was not until three weeks later that the government came back and issued a subsequent modification. In the meantime, had the contractor started making new dollars? He had not. He was trying to figure out how he could avoid making the new dollars. Right. OK. Mr. Shirling, is this case about $2,000 or $10,000? It's about $10,000. It is not a lot of money. But I think what's at stake here is- It's the principle of the thing. Well, it's what can a contractor understand when he receives a change order unilaterally from the government? Some people say when it's said it's not the money, it's the principle, it's the money. Well, I can tell you this. And I've represented this in the past. This contractor no longer exists. They are simply pursuing this out of a closing up and winding up their business affairs. Surely they no longer exist because of this case. Because of this contract was a major impact on their business. Now, granted, it's $10,000. This is a small manufacturing company. So they're not going to do business with the government anymore, are they? They are not. That's a good thing. They believe it is this. Would you like to save the remainder of your time? I would, Your Honor. Mr. Schwinn. May it please the Court. I'd like to address one primary issue in response to what we've heard from the petitioner. And that's whether or not we had any type of a compensable change in this case to the contract. Our position is that substantial evidence supports the administrative or the ASBCA's decision that there was no compensable change. Modification 3, as poorly worded as it was, and it is no model that's going to be used in the government contracts administration course, was... Does anybody ever sit down with the contracting officer after a case like this and say, let's have a little training session? Does anybody ever do that? Yes, Your Honor. In fact, when I was at that level several years ago, we would often sit down as some type of an after-action review and do exactly that. And I'm sure it happened in this case as well.  I've never seen one quite like this. But this is not the first time we've seen these kinds of cases come flowing through where there's been a dispute over a mod that nobody understood. One of the main challenges, Your Honor, is just getting the contracting officers to contact their counsel before doing things like this. I think that removes a lot of the difficulties we have. However, in this case, we not only have the phone call from counsel for the government several days later clarifying any ambiguity. We also have an e-mail from the contractor on the same day. And I'd like to direct the Court's attention. This is at page 89 of the joint appendix, where the contractor himself acknowledges at the bottom of this e-mail, as the goal of this FAT, the first article test, as the goal of this first article test request will be to test these two components. As the Court is aware, the two components are the unknown and unproven jack and the caster. It is in the government's best interest to determine conformance of these two items in the most cost-effective and expeditious manner. The modifications dated the same date, 3 April 2003. What this says is that the contractor understood very well what the problem was before the modification was issued. So as unclear as the modification may have been on its face, in a vacuum, there was no compensable change. There was no change work in this case. There was no request to build a new valley, as the Court has questioned the contractor's counsel. You're not disputing the $406 they're supposed to get, are you? No, Your Honor, we're not. There's no process. I love a generous government. We do what we can. But in this case, we've never, at least our position in this appeal, is that there was a change. The change was box up one of those units you've already constructed, send it to Colts Neck, New Jersey, for the Navy at Earl to test. We will compensate you for that. That, in fact, finally took place. The issue raised by this appeal is whether the government is somehow responsible to pay for the cost of resistance. We're not talking about the cost of performance. Performance is boxing up the unit, sending it to the Navy. Resistance is everything that this contractor did to dispute that, to stop that from happening, and then ultimately comply. We think in this case the government has paid for the change it ordered, and under these circumstances we ask the Court to affirm the decision of the ASPCA. Thank you, Mr. Schwinn. Shirley has a little time left. The email referred to by counsel was actually prior to the issuance of the modification, and the very first statement on page 89 is where the contracting officer indicates to the ACO, the administrative contracting officer, that the contractor is to proceed as I direct him when and if he receives the model. The government initially, at the trial level in the ASPCA, adopted the special language or unique language. The government in its recent brief has said, no, no, no, we're not going to have that. You should have gone with the intent of the modification. If the intent of the modification is as stated, the contractor was to provide, as a minimum, a first article unit. No one takes into consideration, the government's brief doesn't even mention it, the Armed Services Board of Contract Appeals doesn't address it, but modification 4 was issued, and modification 4 deleted one unit from the contract, and the only unit that could be deleted from the contract was the unit requested under mod 3. No one takes that into consideration. This contractor was required by modification. He can't respond to letters of counsel. He can respond to, and the only person with authority on the contract is the contracting officer. She issued direction that you provide, no, that she invoked the first article requirements of the contract, which, as stated in the contract, requires a pre-production unit. Three weeks later, after conversations, letters back and forth, she finally issues modification 4, deleting the first article requirement of modification 3, and issues a letter which succinctly states what she wants. She wants a unit that's already been produced and some component parts. I don't understand why it was so difficult to write that letter back in January of 03, rather than two modifications in April of 03. And I understand the confusion, but a contractor has no obligation, or has an obligation, to comply with the contract as written and as modified. When he receives unilateral direction from the contracting officer, he's required to comply with it. When he complied, what he did is he sent back and says, gosh, you sent out this modification. This is what that means because of how poorly, well, we say poorly worded. It may be poorly worded based on her actual intent, but it is clear what she's requiring. Contractor has no ability to simply say, oh, I'm not going to do that. It's under contract to comply with the contract. After three weeks of back and forth conversations, they finally get a letter where the contracting officer provides information that she really wants, her true intent. And then the government actually corrects what it had mistakenly done in 03. Those are all documents written by the government. Contractor has nothing to, I mean, he's obligated to comply with them. Anything further, Mr. Sheridan? I think that's it. Thanks very much. Okay, did you take a number of items? The Honorable Clinton Sheridan comes tomorrow morning at 10 a.m.